UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DONALD JOHNSON, *individually and on
behalf of all others similarly situated*,

                    Plaintiffs,

    v.

SELECT PORTFOLIO SERVICING, INC.,

                    Defendant.

Case No. 3:24-cv-01583-AR

**FINDINGS AND
RECOMMENDATION**

_____

**ARMISTEAD, United States Magistrate Judge**

      Donald Johnson brings this putative class action against Select Portfolio Servicing, Inc.

(SPS), his mortgage servicer. He alleges that when SPS charged him a $15 fee for mortgage

payments made by phone or internet (known as pay-to-pay fees or EZ Pay fees), SPS violated

Oregon's Unlawful Debt Collection Practices Act (UDCPA) (ORS § 646.639(2)(n)) and

Unlawful Trade Practices Act (UTPA) (ORS § 646.608(1)(u)). (Compl. ¶¶ 15-17, ECF 1-1.) SPS

moves for judgment on the pleadings on Johnson's complaint under Federal Rule of Civil

Procedure 12(c), contending that ORS § 646.639(2)(n) does not apply to the EZ Pay fees. SPS

also contends that Johnson's complaint lacks allegations necessary for him to state a claim under

the UDCPA or the UTPA. (MJP at 2, ECF 28.) As the court explains below, because Johnson has

pleaded viable claims, SPS's motion should be denied.[1]

**PRELIMINARY MATTERS**

Generally, district courts may not consider material outside the pleadings when assessing

the sufficiency of a complaint under Rule 12 of the Federal Rules of Civil Procedure. *Khoja v.*

*Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (applying standard to Rule

12(b)(6) motion); *United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008) (applying

standard to Rule 12(c) motion). That rule has two exceptions: the incorporation-by-reference

doctrine and judicial notice under Federal Rule of Evidence 201. *Khoja*, 899 F.3d at 998.

SPS asks the court to consider four exhibits. Two exhibits fall under the incorporation-by-

reference doctrine: (1) Johnson's Deed of Trust dated February 18, 2022; and (2) Note dated

February 18, 2022, that together secure his mortgage loan of $336,000 to the real property.

(Sussman Decl. Exs. 1 & 2, ECF 29; MJP at 4.) The other two exhibits, SPS contends, may be

judicially noticed: (3) an Order Approving a Stipulated Final Judgment between the Federal

Trade Commission (FTC) and Fairbanks Capital Corporation (Case No. 1:03-cv-12219 (D.

Mass.)), SPS's predecessor, dated October 6, 2003 (2003 FTC Order); and (4) a Modified

Stipulated Final Judgment and Order between the FTC and SPS (Case No. 03-12219 (D. Mass.)),

---

[1]     The parties request oral argument. The court, however, does not believe that oral
argument would help resolve the pending motion. See LR 7-1(d)(1).

dated September 4, 2007 (2007 FTC Order). (Sussman Decl. Exs. 3 & 4, ECF 29; MJP at 15.)

Neither party disputes the accuracy of the above documents or objects to their consideration.

**A.    *Incorporation-by-Reference—Exhibits 1 & 2***

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents

as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. A document is subject

to incorporation-by-reference if the "plaintiff refers extensively to the document" or it "forms the

basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

Whether a document "forms the basis" of a complaint turns on whether the complaint

"necessarily relies" on that document. *Ecological Rights Foundation v. Pacific Gas and Elec.*

*Co.*, 713 F.3d 502 (9th Cir. 2013). "A court may consider evidence on which the complaint

"necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the

plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)

motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

In his UDCPA claim, Johnson alleges that he is a consumer that owes a debt—his

residential mortgage loan—and that SPS is a debt collector because it is in the business of

collecting debts by accepting mortgage payments. (Compl. ¶¶ 27, 88-93.) Under his UDCPA

theory, Johnson must allege that SPS charged a fee that was not "expressly authorized" by the

"instrument that create[d] the debt." ORS § 646.639(2)(n). Johnson's residential mortgage is

secured by the Deed of Trust and Note that are dated February 18, 2022. (Sussman Decl. Exs. 1

& 2.) Because Johnson relies on his mortgage documents, consisting of the Deed of Trust and

Note, to establish required elements of his UDCPA claim, they form the basis of that claim and

are incorporated by reference into the Complaint.

**B.**    ***Judicial Notice—Exhibits 3 & 4***

Federal Rule of Evidence 201 permits a court, on its own or on motion, to take judicial

notice of facts that are not subject to reasonable dispute because they can "be accurately and

readily determined from sources whose accuracy cannot reasonably be questioned." FED. R.

EVID. 201(b). The court may take judicial notice of court orders and other matters of public

record. *United States v. Navarro*, 800 F.3d 1104, 1109 n.3 (9th Cir. 2015); *Burbank–Glendale–*

*Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1364 (9th Cir.1998). That is the case

here. Exhibits 3 and 4, and the 2003 and 2007 FTC Orders, are court orders that are matters of

public record whose accuracy is not challenged. The court grants SPS's request to take judicial

notice of them.

## BACKGROUND

The court construes as true the factual allegations of Johnson's complaint. *Weston Fam.*

*P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617 (9th Cir. 2022). Johnson's Hillsboro, Oregon home

is secured by a mortgage consisting of a Deed of Trust and a Note, dated February 18, 2022.

(Compl. ¶ 10, ECF 1-1; Sussman Decl. Exs. 1 & 2.) The Note provides that payments may be

made by "cash, check or money order." (Ex. 2, ECF 29-2 at 2.) His original lender was Royal

Pacific Funding Corporation, and sometime later, SPS became his mortgage loan servicer.

(Compl. ¶ 10.)

In August, September, October, and November 2023, Johnson made mortgage payments

by phone. (Compl. ¶ 63.) Each time, SPS charged him a fee of $15. (*Id.* ¶¶ 36, 63.) Payments

made by phone or online cost SPS approximately 50 cents per transaction to process, and SPS

retains the remaining $14.50. (*Id.* ¶¶ 29, 34, 37.) In contrast, payments made by check cost SPS approximately $1 to $4 to process. (*Id.* ¶¶ 32, 37, 40.)

On February 5, 2024, Johnson sent a letter to SPS stating that, after "examining my monthly mortgage statements," he had "noticed charges for payments made by phone or internet." (*Id.* ¶ 66.) He also questioned whether charging the fees complied with Oregon law and asked that SPS discontinue charging them. (*Id.* Ex. D.) SPS responded that it intended to keep charging pay-to-pay fees. (*Id.* ¶ 67.) On May 21, 2024, Johnson sent another letter, via certified mail, to SPS stating that he believed the charges violate Oregon debt collection and consumer protection laws. (*Id.*) SPS refunded the EZ Pay fees it charged Johnson, no longer charges Johnson pay-to-pay fees, and states that he will not be charged such fees again. (Answer ¶¶ 7, 10, ECF 11.)

On August 4, 2024, Johnson filed this action in Washington County Circuit Court, and SPS timely removed to this court. In the complaint, Johnson, on behalf of himself and others similarly situated, alleges that the EZ Pay fees violate the UDCPA and UTPA and seeks $10 million in damages.[2] SPS now moves for judgment on the pleadings under Rule 12(c).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a

---

[2]        Previously, the court denied SPS's motion to stay this action pending an appeal of a California case that also involved EZ Pay fees. (Op. & Order, ECF 20.) The Ninth Circuit has since issued an unreported decision in that case. *Mirabadi v. Select Portfolio Servicing, Inc.*, No. 24-1487, 2025 WL 485518 (9th Cir. Feb. 13, 2025) (affirming on jurisdictional grounds only).

court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation modified). As with dismissal under Rule 12(b)(6), judgment on the pleadings is proper when a claim is unsupported by a cognizable legal theory or when the complaint is without sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (describing standard for Rule 12(b)(6) motion).

Assessing the sufficiency of a complaint's factual allegations requires the court to (1) accept that well-pleaded material facts alleged in the complaint are true; (2) construe factual allegations in the light most favorable to plaintiff; and (3) draw all reasonable inferences from the factual allegations in favor of plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). A plaintiff's legal conclusions that are couched as factual allegations, however, need not be credited as true by the court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Johnson's claims require application of Oregon statutes, and this court must therefore interpret and apply the substantive law of Oregon. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938). And federal courts are bound by the interpretation of a state statute by a state's highest court. *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute."). If the Oregon Supreme Court has not directly

addressed a question raised by the parties' arguments, the court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Nelson v. City of Irvine*, 143 F.3d 1196, 1206 (9th Cir. 1998). When it comes to statutory construction, the court's task is to discern the legislature's intent using the analytical framework described in *State v. Gaines*, 346 Or. 160, 171-72 (2009). Under that framework, "text and context" is examined first. *Id.* at 171.[3]

## DISCUSSION

A.    *Claim 1—UDCPA*

Johnson alleges that SPS violated Oregon's Unlawful Debt Collection Practices Act— ORS § 646.639(2)(n)—when it charged him $15 to pay his mortgage payment by phone, a charge he says was not expressly allowed by the mortgage agreement. ORS § 646.639(2)(n) provides that

> A debt collector engages in an unlawful collection practice if the debt collector, while collecting or attempting to collect a debt, does any of the following:
>
> Collects or attempts to collect, by any means, including through legal action, interest or other charges or fees that exceed the actual debt unless the agreement, contract or instrument that creates the debt expressly authorizes, or a law expressly allows, the interest or other charges or fees.

---

[3]    "[P]ertinent legislative history that a party may proffer" is examined next, giving that legislative history "whatever weight [the court] deems appropriate." *Gaines*, 346 Or. at 166, 172. Finally, "[i]f the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.* at 172. The court does not discuss legislative history because the clear text and context of the statute are dispositive. The parties do not ask the court to examine legislative history or use maxims of construction.

Page 7 – FINDINGS AND RECOMMENDATION
*Johnson v. Select Portfolio Servicing, Inc.*, 3:24-cv-01583-AR

ORS § 646.639(2)(n).[4]

The statute defines a "debt" as "an obligation or alleged obligation that arises out of a consumer transaction." ORS § 646.639(1)(f). In turn, a "consumer transaction" is defined as "a transaction between "a consumer and a person that sells, leases or provides property, services or credit to consumers." ORS § 646.639(1)(c). Continuing, a "debt collector" under the UDCPA is defined as "a person that by direct or indirect action, conduct or practice collects or attempts to collect a debt owed, or alleged to be owed, to a creditor or debt buyer." ORS § 646.639(1)(h). A "creditor" means "a person that, in the ordinary course of the person's business, engages in consumer transactions that result in a consumer owing a debt to the person."

ORS § 646.639(1)(e).

With those definitions in hand, Johnson asserts that SPS's EZ Pay fee violated ORS § 646.639(2)(n). That is, Johnson's mortgage is an obligation that arose out of a consumer transaction, which is therefore a "debt" as defined by ORS § 646.639(1)(f). And SPS, as the entity in this case collecting the debt owed by Johnson, is a "debt collector" as defined by ORS § 646.639(1)(h). Having satisfied those definitions, a plain reading of that statute suggests that the

---

[4]    The remainder of ORS § 646.639(2)(n) provides:

A debt collector may not be held liable in any action brought under this paragraph if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. The fact that the debt collector obtains a judgment for less than the amount sought in the complaint, or fails to obtain a judgment at all, does not by itself constitute evidence of a violation of this paragraph.

Neither of those caveats is at issue.

collection of the $15 fee for payment by phone runs afoul of ORS § 646.639(2)(n). Again, ORS § 646.639(2)(n) says that it is an "unlawful debt collection" practice if a "debt collector, while collecting or attempting to collect a debt," "[c]ollects or attempts to collect, by any means, including . . . other charges or fees that exceed the actual debt unless the agreement, contract or instrument that creates the debt expressly authorizes, or a law expressly allows . . . other charges or fees." Here, while collecting Johnson's debt, SPS collected the EZ Pay fee, which is a charge or a fee that exceeded the obligation of the mortgage loan.

Yet SPS contests that plain reading of ORS § 646.639(2)(n). *First*, SPS argues that paragraph (2)(n) does not apply to the EZ Pay fee because the EZ Pay fee is not a "debt." And if EZ Pay fee is not a "debt," SPS is not a "debt collector." (MJP at 6-7.) Rather, SPS characterizes EZ Pay fees "as the product of an optional transaction requested by [Johnson] that is separate from his mortgage debt and paid at the same time the requested service was rendered." (*Id*. at 7.) *Second*, SPS contends that, even if ORS § 646.639 applies, Johnson cannot be successful on the merits, for a few reasons. SPS relies on an Oregon Supreme Court opinion—*Porter v. Hill*, 314 Or. 86, 92 (1992)—to advance its contention that some "attempt to pressure" a debtor is needed to violate ORS § 646.639(2)(n). (MJP at 9.) SPS asserts also that the instrument creating the mortgage debt, Oregon law, and a Federal Trade Commission consent decree allow the EZ Pay fees. (*Id*. at 11-16.)

## A.    *Whether ORS § 646.639(2)(n) Applies*

Although SPS falls under the UDCPA when collecting Johnson's mortgage payment, it nevertheless contends that the statute does not apply when it contemporaneously collects the pay-to-pay fees. SPS relies on out-of-state cases to argue that the EZ Pay fees are not a "debt

owed" because they are not part of the existing "obligation." (MJP at 7-8 (collecting cases).)

Because the pay-to-pay fees are a "simultaneous charge for a separate service" requested by

Johnson, SPS asserts that they are not a "debt" as defined under the statute. (MJP at 7.) Put

differently, SPS posits that the convenience fee "is neither a debt itself nor is it added to the

mortgage debt, but rather is charged for a separate, optional service—more akin to a retail

transaction." (Def.'s Reply at 6, ECF 34.) The court disagrees.

To explain why, the court starts with a critical requirement of statutory construction under

Oregon Law. When interpreting a statute, the court is "not to insert what has been omitted, or to

omit what has been inserted." ORS § 174.010 ("In the construction of a statute, the office of the

judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not

to insert what has been omitted, or to omit what has been inserted[.]"). Paragraph (2)(n) is clear.

A debt collector is permitted to collect only "other charges or fees" that are expressly allowed by

the agreement, contract or instrument that created the debt. Because there is no allowance in

ORS § 646.639(2)(n) for charging fees not permitted by the original debt instrument, construing

the provision to permit a new fee or other charge—as SPS would have it—would insert text into

paragraph (2)(n).

To say that the EZ Pay fee does not violate ORS § 646.639(2)(n) because it falls outside

ORS § 646.639's definition of "debt" does not help SPS. That is because ORS § 646.639(2)

applies to a debt collector "while collecting attempting to collect a debt," and paragraph (2)(n)

prohibits, while collecting a debt, collecting "other charges or fees" that are not authorized by the

original debt instrument. The ordinary meaning of "while" used as a conjunction is "during the

time that." WEBSTER'S THIRD NEW INT'L DICT. 2604 (unabridged ed. 2002). The court

understands that to mean that, during the time a debt collector is collecting a debt (like a mortgage payment), it is prohibited from collecting other charges and fees that are not expressly authorized by the original debt agreement. SPS repeatedly describes EZ Pay as a "fee" in its briefing and clearly states that the fee was collected when it was received the mortgage payment. (MJP at 7 (describing EZ Pay as a "simultaneous charge" that was "assessed at the time payment was made"). There is no question that the collection of the EZ Pay fee occurred "during the time that" SPS collected the mortgage payment. Nor does SPS dispute that the mortgage payments paid by Johnson were debt payments. Even if the court accepted SPS's argument that the EZ Pay fees were fees that were a "separate" charge from the mortgage payment,[5] the collection of them "during the time that" the mortgage payment is collected would violate ORS § 646.639(2)(n). Johnson pleads this temporal requirement adequately when he alleges that "[i]n servicing as the loan servicer for Plaintiff and Class Members, and in *accepting residential mortgage payments at the time it collected Pay-to-Pay Fees*, Defendant SPS was providing 'services or credit to consumers.'" (Compl. ¶ 89) (emphasis added).

With that determined, the court finds unhelpful the non-Oregon cases on which SPS relies to advance its argument that ORS § 646.639(2)(n) does not apply to the EZ Pay fees. The

---

[5]    It is hard to see how the EZ Pay fees are a "separate" transaction as described by SPS. Johnson alleges that "Each time a mortgage borrower whose loan is serviced by SPS makes a loan payment online or over the phone ('Pay-to-Pay Transactions'), SPS charges the borrowers a Pay-to-Pay Fee of up to $15 for using this payment method." The EZ Pay fee and the mortgage payment are very much tied together—there is no pay-by-phone fee without the underlying mortgage payment.

Page 11 – FINDINGS AND RECOMMENDATION
*Johnson v. Select Portfolio Servicing, Inc.*, 3:24-cv-01583-AR

court must adhere to Oregon's methodology for statutory interpretation, and the cases put forth by SPS lack use of that methodology and concern statutes from outside Oregon.

**B.**    ***Whether the UDCPA Claims Fails on the Merits***

The court turns to SPS's arguments that Johnson's UDCPA claim fails on the merits. As the court explains below, it is unpersuaded by SPS's argument that (1) some "attempt to pressure" a debtor and adding to a debt is needed to violate ORS § 646.639(2)(n); (2) the instrument creating the mortgage debt "expressly authorizes" the EZ Pay fees; 3) Oregon law "expressly allows" the EZ Pay fees; and 4) a Consent Order "expressly allows" the EZ Pay fees.

***Pressure and Adding to Mortgage Debt***. SPS contends that Johnson is required to allege that SPS violated ORS § 646.639(2)(n) by "add[ing] the EZ Pay fees to his underlying debt" "to pressure him to pay his mortgage debt." (MJP at 16.) Relied on by SPS for that contention is an Oregon Supreme Court case—*Porter v. Hill*, 314 Or. 86 (1992)—in which the court described provisions of the UDCPA as prohibiting "coercive or abusive tactics" and "adding unauthorized charges to the underlying debt in order to pressure the debtor to pay the underlying debt." (MJD at 16 (citing *Porter*, 314 Or. at 93).) The problem with SPS's argument is that it loads the *Porter* court's passing mention of paragraph (2)(n) with more freight than it can carry.

In *Porter*, the defendant, a former client of the attorney who was suing him for failure to pay legal bills, counterclaimed against the plaintiff's attorney on the ground that, because the debt asserted by the attorney was nonexistent because of a contingency and pro bono fee arrangement they had agreed to, bringing a lawsuit to enforce that nonexistent debt was a violation of the UDCPA—ORS §646.639(2)(k). *Porter*, 314 Or. at 88-89. Under that provision of

the UDCPA, it is an unlawful debt collection practice when a debt collector, "while collecting or

attempting to collect a debt,"

> Attempts or threatens to enforce a right or remedy while knowing or having
> reason to know that the right or remedy does not exist, or threatens to take any
> action that the debt collector in the regular course of business does not take.

ORS § 646.639(2)(k). The defendant argued that a debt "is a right to be repaid" and therefore an

attempt to enforce a nonexistent debt is an attempt to enforce a nonexistent right, which violated

paragraph (2)(k). *Porter*, 314 Or. at 90.

The flaw in that argument, the court reasoned, is that when the text and context of

paragraph (2)(k) are considered to discern the legislature's intent, the UDCPA defines "debt" as

"an obligation *or alleged obligation* that arises out of a consumer transaction." *Id*. at 91 (quoting

ORS § 646.639(1(e)). And the definition recognizes that a "debt" may or may not be owed and it

never used the word "right." *Id*. The court reasoned that the UDCPA "proceeds from the

assumption that a debt does (or might) exist and prohibits the debt collector from using unfair

debt practices to collect it." *Id*. at 92. The court looked to other provision of the UDCPA—

paragraphs (2)(a), (2)(d), and (2)(f) as examples of prohibited "methods of collecting a debt,

such as enforcing a right collateral to the debt in order to pressure the debtor to pay the debt." *Id*.

And the court observed that the paragraphs in subsection (2) "portray coercive and abusive

tactics." *Id*.

The court added that, observing that paragraph (2)(k) never uses the word "debt," if the

legislature had meant to include "debt" as a nonexistent right, it could have included it in

paragraph (2)(k) like it did with two other provisions of the UDCPA—paragraphs (2)(m) and

(2)(n). In describing those two sections in tandem, the court said that "[t]hose paragraphs refer to

methods of collecting a debt: adding unauthorized charges to the underlying debt in order to pressure the debtor to pay the underlying debt. But they also concern the amount of the debt itself." *Id.* at 93.

So from that discussion in *Porter* of the UDCPA and paragraph (2)(n), SPS argues that Johnson was required to and did not allege that the EZ Pay fees "were added" to his mortgage debt as a coercive and abusive tactic in attempt to pressure him to pay his mortgage. The flaws in that argument are as follows.

The argument has as its premise that descriptions of a statute or a statute's purpose by the Oregon Supreme Court become elements needed to be proved by the plaintiff. That is incorrect. Even for the UDCPA paragraph ((2)(k)) that the court construed while answering the question presented, the court merely held that attempts to enforce a nonexistent *right* does not extend to an attempt to enforce a nonexistent *debt*. Nowhere however did the court add "coercion" or "abusive" to paragraph (2)(k) as an element. The most that could be said is that an attempt to enforce a nonexistent right is conduct that is coercive or abusive.

Likewise, any description of the subsection (2) paragraphs of the UDCPA that the court was not tasked with discerning legislative intent does not create, add, or change what the actual texts of those provisions require. To conclude otherwise would run afoul of ORS § 172.010: "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]" Paragraph (2)(n) does not state that the unauthorized charges must be caused by "pressure," coercion, or abuse as advanced by SPS. Instead, the statute makes it an unlawful collection practice to "collect or attempt to collect" other fees or charges that exceed the "actual

Page 14 – FINDINGS AND RECOMMENDATION
*Johnson v. Select Portfolio Servicing, Inc.*, 3:24-cv-01583-AR

debt" unless expressly authorized or allowed. ORS § 646.639(2)(n). The Oregon legislature, by enacting that provision of the UDCPA already has determined that collecting unauthorized charges is a coercive and abusive tactic. *Porter*, 314 Or. at 92.

This court is obligated to follow a "state court's *construction* of a state statute." *Mitchell*, 508 U.S. at 483 (emphasis added). The *Porter* court construed paragraph (2)(k) of the UDCPA but whatever it said about paragraph (2)(n) was not the product of statutory construction or interpretation. The court was not tasked with construing paragraph (2)(n) to resolve the parties' arguments, nor did it use the methodology on which it relied to construe paragraph (2)(k) when it contrasted that provision with paragraph (2)(n). Given that the court did not construe paragraph (2)(n), it is this court's task to do so, using Oregon's *Gaines* framework for statutory interpretation.

Thus, a violation of ORS § 646.639(2)(n) requires that a debt collector (1) while collecting attempting to collect a debt, (2) collects or attempts to collect, by any means, including through legal action, (3) interest or other charges or fees, (4) that exceed the actual debt unless the agreement, contract or instrument that created the debt expressly authorizes, or a law expressly authorizes, the interest or other charges or fees. SPS's briefing lacks textual or contextual analysis of those statutory elements that would suggest that they require its version of paragraph (2)(n).[6]

---

[6]     Even less persuasive than SPS's reliance on the *Porter* court's passing reference to ORS § 646.639(2)(n), is its reliance on *Mirabadi v. Select Portfolio Servicing, Inc.*, Case No. CV 23-06809 PSG(SP), 2024 WL 1151673, at *6, to assert that Johnson must allege that the pay-to-pay fees were added to his underlying mortgage. (MJP at 10.) *Mirabadi* also involved a challenge to EZ Pay fees charged by SPS under California's Rosenthal Act. There, the *Mirabadi* court concluded that the plaintiff's "conclusory allegations" that the pay-to-pay fees would be "added

***Expressly Authorizes.*** SPS also asserts that Johnson's UDCPA claim fails because the

pay-to-pay fees are expressly authorized[7] by paragraphs 14 and 16 in the Deed of Trust. Those

two paragraphs provide:

> **14.    Loan Charges.** Lender may charge Borrower for services performed in
> connection with Borrower's default, for the purpose of protecting Lender's
> interest in the Property and rights under this Security Instrument, including . . .
> attorneys' fees, property inspection and valuation fees. In regard to any other fees,
> the absence of express authority in this Security Instrument to charge a specific
> fee to Borrower shall not be construed as a prohibition on the charging of such a
> fee. Lender may not charge fees that are expressly prohibited by this Security
> Instrument or by Applicable Law.
>
> . . . .
>
> **16.    Governing Law; Severability; Rules of Construction.** This Security
> Instrument shall be governed by federal law and the law of the jurisdiction in
> which the Property is located. All rights and obligations contained in this Security
> Instrument are subject to any requirements and limitations of Applicable Law.
> Applicable Law might explicitly or implicitly allow the parties to agree by
> contract or it might be silent, but such silence shall not be construed as a
> prohibition against agreement by contract.

---

to the principal of her mortgage," were insufficient to state a claim. *Id. Mirabadi* does not dictate
the outcome here.

   The plaintiff there relied on California Civil Code § 1788.13(e), which makes it an
unlawful collection practice to falsely represent that the "consumer debt may be increased by the
addition . . . other charges if, in fact, such fees or charges may not legally be added to the
existing obligation." *Id.* (quoting CAL. CIV. CODE § 1788.13(e)). The text of § 1788.13(e) closely
mirrors paragraph (m) of the UDCPA, which likewise prohibits representations that "an existing
debt may be increased" by adding other charges if they "may not legally be added to the existing
debt." ORS § 646.639(2)(m). Johnson is proceeding here under paragraph (n) which, as noted
above, contains no requirement that the fees be added to the underlying mortgage and *Mirabadi*
thus is distinguishable.

[7]    To refresh, Johnson's claim under ORS § 646.639(2)(n) prohibits extra fees unless "the
agreement, contract, or instrument that creates the debt expressly authorizes" them. Neither party
disputes that the "instrument that creates the debt" as used in the statute are Johnson's Deed of
Trust and Note that together secure his mortgage loan.

(Sussman Decl. Ex. 1, ECF 29-1 at 10-11.)

According to SPS, those provisions underscore its ability to charge pay-to-pay fees. SPS reasons that under the Loan Charges provision, the "absence of express authority" does not prohibit it from charging EZ Pay fees. Also argued by SPS is that the Governing Law provision stating that state law "silence" does not prohibit it from agreeing with Johnson to accept his payment by phone in exchange for him agreeing to pay the convenience fees. The crux of SPS's argument is that because the pay-to-pay fees are not expressly prohibited by state law, it is "expressly authorized" by paragraphs 14 and 16 to impose them, relying on *Mirabadi v. Select Portfolio Servicing, Inc.*, Case No. CV 23-06809 PSG(SP), 2024 WL 1151673, at *4-5. The court disagrees.

SPS's argument ignores the plain text of ORS § 646.639(2)(n). As this court recently discussed, "express" means "[d]irectly and distinctly stated. Made known distinctly and explicitly, and not left to inference." *Knapp v. PHH Mortg. Corp.*, No. 3:24-cv-01900-AR, 2025 WL 1174947, at *6 (D. Or. Apr. 18, 2025) (quoting BLACK'S LAW DICTIONARY 580 (6th ed. 1990)); *see also Gordon v. Rosenblum*, 361 Or. 352, 361 (2017) (consulting Black's Law Dictionary to give legal terms their legal meaning). And "authorize" means "[t]o empower; to give a right or authority to act. . . . It has a mandatory effort or meaning, implying a direction to act. 'Authorized' is sometimes construed as equivalent to 'permitted'; or 'directed[.]" BLACK'S LAW DICTIONARY 133 (6th ed. 1990.) The Loan Charges and Governing Law provisions do not explicitly or directly address or permit pay-to-pay fees. The only fees that are expressly discussed are those relating to a default to protect SPS's interest in the property and rights under the security instrument—attorneys' fees, property inspection and valuation fees. It is undisputed

Page 17 – FINDINGS AND RECOMMENDATION
*Johnson v. Select Portfolio Servicing, Inc.*, 3:24-cv-01583-AR

that Johnson was not in default at the time the convenience fees were collected and thus could not have been charged to protect SPS's rights or interests in the property. Nowhere in the Deed of Trust are pay-to-pay fees mentioned, let alone *expressly authorized*. Accordingly, the court has little difficulty concluding that the convenience fees charged here are not expressly authorized by Johnson's mortgage documents. *See Knapp*, 2025 WL 1174947, at *6 (finding identical deed of trust terms did not "expressly authorize" pay-to-pay fees).

The court also is not persuaded by SPS's reliance on *Mirabadi* to argue that the Loan Charges provision allows EZ Pay fees. Ihe *Mirabadi*, the district court determined that "[t]he plain terms of the 'Loan Charges' clause expressly allow for fees like the EZ Pay fee, as nowhere does the agreement forbid such fees. And the agreement provides that if there is no express prohibition, then there is no prohibition at all." *Mirabadi*, 2024 WL 1151673, at *5. The *Mirabadi* rationale on which SPS relies, however, discusses the borrower's breach of contract claim. *Id.* Because *Mirabadi* court did not analyze whether the pay-to-pay fees were "expressly authorized" by the "instrument that created the debt" under Oregon's UDCPA, the court finds its reasoning on that point distinguishable.

Additionally, courts interpreting a parallel provision of the FDCPA, 15 U.S.C. § 1692f(l),[8] have determined that similar Loan Charges and Governing Law mortgage documents do not "expressly authorize" convenience fees. *See DeSimone v. Select Portfolio Servicing, Inc.*, 748 F. Supp. 3d 136, 163 (E.D.N.Y 2024) ("At most, these two provisions *do not prohibit* the

---

[8]    That section prohibits a debt collector from using "unfair or unconscionable" means to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Page 18 – FINDINGS AND RECOMMENDATION
*Johnson v. Select Portfolio Servicing, Inc.*, 3:24-cv-01583-AR

parties from entering into a new contract with DeSimone for the pay-to-pay fees, but they certainly *do not expressly authorize* the parties to enter into such an agreement."); *McFadden v. Nationstar Mortg. LLC*, CV No. 20-166 (EGS), 2022 WL 1001253, at *7 (D.D.C. Apr. 4, 2022) (finding pay-to-pay fees were not expressly authorized by deed of trust and distinguishing breach of contract claim, and plaintiff stated § 1692f(1) claim); *Simmet v. Collection Consultants of Cal.*, No. 16-02273-BRO (PLAx), 2016 WL 11002359, at *5 (C.D. Cal. July 7, 2016) (finding convenience fee was prohibited by unambiguous text of § 1692f(1) because it was not "expressly authorized by underlying debt agreement"); *see also Gonzalez v. Allied Collection Servs., Inc.*, 852 F. App'x 264, 266 (9th Cir. 2021) (affirming district court's summary judgment for borrower because debt collector attempted to collect an amount that was "not expressly authorized by the agreement creating the debt" under 15 U.S.C. § 1692f(1)).

In summary, Johnson's Deed of Trust and Note do not "expressly authorize" the pay-to-pay fees, and the court turns to whether "a law expressly allows" them.

***Expressly Allowed by Oregon Law.*** SPS argues that Oregon contract law allows parties to modify contracts by mutual consent. Again pointing to the "Loan Charges" and "Governing Law" provisions in paragraphs 14 and 16 of the Deed of Trust, SPS argues that the "absence of express authority" to charge specific fees and "state law silence" does not prevent it from orally agreeing with Johnson to accept his payments by phone in exchange for a fee. (MJP at 12-13.) That is, SPS contends that because Oregon contract law does not expressly forbid pay-to-pay fees, it is "expressly allowed" to impose them. Also argued by SPS is that several courts have approved of similar convenience fees under the identical or similar "Loan Charges" and "Governing Law" provisions because they constitute "separate agreements." (*Id.* at 12-14

(collecting cases).) The similarity of California and Oregon law on oral modification of contracts and the identical terms in Johnson's and Mirabadi's Deeds of Trust, in SPS's view, requires the same result. (*Id.* at 13 citing *Mirabadi*, 2024 WL 1151673, at *5).

Under SPS's interpretation, unless the fees are "expressly prohibited" by law, state law silence does not prohibit it from agreeing with Johnson to accept his mortgage payments by phone in exchange for him agreeing to pay the convenience fees. The court rejected this same rationale in *Knapp*, 2025 WL 1174947, at *5. In *Knapp*, the plaintiff and PHH, her mortgage servicer, agreed to a written amendment to her underlying mortgage documents that allowed PHH to collect up to $19.50 in fees each time the plaintiff made payments online or by phone. *Id.* The plaintiff challenged the pay-to-pay fees under ORS § 646.639(2)(n). PHH argu`ed that the written amendment "expressly authorized" the convenience fees. *Id.* This court concluded that PHH's argument ignored the plain text of the statute. *Id.* at *6. Because the fees were not authorized by Knapp's underlying debt instruments, under the statute, the fees were prohibited unless they were "expressly allowed" by law. *Id.* And, because "express" means explicit, the court rejected PHH's contention that amending the contract consistent with Oregon contract principles was "not equivalent to a law *expressly allowing* the fee." *Id.* at *7 (citing *Lembeck v. Arvest Cent.Mortg. Co.*, 498 F. Supp. 3d 1134, 1137 (N.D. Cal. 2020) (observing that whether the underlying mortgage documents permit amendment "merely begs the question of whether that contract is permitted by law" and did not make the amendment lawful under the federal or state law)).

Because neither party cited controlling case law, the court in *Knapp* again looked to the FDCPA, specifically 15 U.S.C. § 1692f(1), which prohibits the collection of "any amount"

unless it is "permitted by law." *Id.* at *7. Other courts examining § 1692f(l) concluded that "permitted by law" meant "affirmative sanction or approval," and thus required more than the "lack of prohibition." *Id.* (citing *Alexander v. Carrington Mortg. Servs.*, 23 F.4th 370, 377 (4th Cir. 2022), and *Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1292 (11th Cir. 2025)). Relying on *Alexander* and *Glover* interpreting UDCPA's federal counterpart, the court concluded that absent a state or federal law affirmatively approving pay-to-pay fees, the mortgage documents permitting PHH to amend its contract did not "expressly allow" the pay-to-pay fees. *Id.*

Contrary to SPS's contention, *Knapp*'s rationale applies with equal force here. Although *Knapp* involved a written amendment, SPS makes the same arguments about oral amendment of Johnson's underlying mortgage documents as PHH did concerning written amendment. (MJP at 12-13.) And as in *Knapp*, SPS identifies no state or federal statute that expressly allows or affirmatively approves of pay-to-pay fees.

The court acknowledges that a split of authority has emerged concerning the legality of pay-to-pay fees. *See Knapp*, 2025 WL 1174947, at *7 (collecting cases). As expressed in *Knapp*, "the rationales of the Circuit Courts of Appeal recently considering pay-to-pay fees are more persuasive to this court and better support the purpose of consumer protection laws at issue here." *Id.* As the Eleventh Circuit court recently held:

> It is unlikely that, where the agreement creating the debt did not authorize an amount, Congress intended for debt collectors to collect it by forming new contracts so long as state law simply did not prohibit it. Congress expressly noted that existing laws for preventing abusive debt collection practices were "inadequate to protect consumers." 15 U.S.C. § 1692(b). If any valid, new contract were enough, debt collectors would be free to offer unfair terms to consumers who cannot seek a better deal elsewhere. Because of this power

imbalance, the FDCPA restricts the terms debt collectors can offer when
collecting a debt, just as other laws prohibit other kinds of contracts.

*Glover*, 127 F.4th at 1293.

Viewing the allegations in the light most favorable to Johnson, he has plausibly alleged
that SPS violated ORS § 646.639(2)(n) when it charged him pay-to-pay fees each time he made
his mortgage payments by phone.

***Consent Decree.*** SPS argues that the pay-to-pay fees are expressly allowed by the FTC
Orders that its predecessor entered in 2003 and modified in 2007. The Federal Trade
Commission brought an action against SPS's predecessor relating to service fees it collected
when accepting payments by wire transfer. (Sussman Decl. Ex. 3, ECF 29-3 (attaching *United
States v. Fairbanks Cap. Corp.*, No. 1:03-cv-12219 (D. Mass.), ECF 6 (2003 FTC Order)); Ex. 4,
29-4 (*United States v. Select Portfolio Servicing, Inc.*, No. 1:03-cv-12219 (D. Mass.), ECF 96
(2007 FTC Order)). The court entered a Consent Order that provided that SPS is

> permanently restrained and enjoined, in connection with the servicing of any loan,
> from assessing and/or collecting any fee unless it is for services actually rendered
> and is . . . a reasonable fee for a specific service requested by a consumer that is
> assessed and/or collected only after clear and conspicuous disclosure of the fee is
> provided to the consumer and explicit consent is obtained from the consumer to
> pay the fee in exchange for the service, and such fee is not otherwise prohibited
> by law or the loan instruments.

(2003 FTC Order at 10, ECF 29-3; *see also* 2007 FTC Order at 9-10, ECF 29-4 (including same
provision).) According to SPS, the FTC Orders permit it to charge the pay-to-pay fees when it
satisfies certain conditions. (MJP at 16.) Because the fees it charged were for services requested
by Johnson after the fee was disclosed and consented to, SPS argues that the pay-to-pay fees are
expressly allowed. SPS misses the mark.

Page 22 – FINDINGS AND RECOMMENDATION
*Johnson v. Select Portfolio Servicing, Inc.*, 3:24-cv-01583-AR

Nothing in the terms of the Consent Orders expressly allow SPS to charge pay-to-pay fees. The terms of the Consent Orders allow a "reasonable fee" and further require that the fee is "not otherwise prohibited by law." As Johnson alleges here, the pay-to-pay fees are not "reasonable" because they are many times greater than SPS's costs to provide them and are alleged to be prohibited under the UDCPA and UTPA. (Compl. ¶¶ 46-48.) And as one court recently observed, permitting SPS to charge pay-to-pay fees "would turn the purpose of the consent order, which enjoined [SPS] from collecting certain fees and failing to disclose information, on its head." *Hardnett v. Select Portfolio Servicing, Inc.*, No. 24-01534 (AHA), ____ F. Supp. 3d ____, 2025 WL 2615019, *7 (D.D.C. Sept. 10, 2025).

In short, SPS has failed to show that it is entitled to judgment on the pleadings on Johnson's UDCPA claim.

## B.       *Claim 2—UTPA*

Oregon's Unlawful Trade Practices Act creates a private right of action for persons who have suffered "an ascertainable loss of money or property, real or personal," resulting from another's "willful use or employment of a method, act, or practice" identified as unlawful under the statute. *Santoro v. Ocwen Loan Servicing, LLC*, No. 6:14-cv-00522-AN, 2023 WL 8355367, at *7 (D. Or. Dec. 1, 2023). To state a claim under the UTPA, Johnson must allege (1) a violation of specific conduct in ORS § 646.608, (2) causation, (3) damages, and (4) willfulness by SPS. *See id.* (citing *Colquitt v. Mfrs. and Traders Trust Co.*, 144 F. Supp. 3d 1219, 1231 (D. Or. 2015)); *see also Bank of N.Y. Mellon v. Stabenow*, No. 3:16-cv-01590-MO, 2017 WL 1538156, at *5 (D. Or. Apr. 24, 2017) (setting out elements of UPTA claim).

The statute identifies many unlawful trade practices and includes a catchall provision that states "any other unfair or deceptive conduct in trade or commerce" is an unlawful trade practice. ORS § 646.608(1)(u). Johnson may sue under the catchall provision if the Oregon Attorney General has established a rule declaring the conduct at issue "unfair or deceptive in trade or commerce." ORS § 646.608(4). As relevant here, Johnson relies on rules stating that mortgage servicers have engaged in "unfair and deceptive acts" if the servicer "[f]ails to deal with a borrower in good faith." OAR § 137-020-0805(6); (Pl.'s Opp'n at 19-21.) "Good faith" is defined as "honesty in fact and the observance of reasonable standards of fair dealing[.]" OAR § 137-020-0800(2). In the complaint, Johnson alleges that SPS has failed to act in good faith by charging him and other borrowers grossly inflated fees for making their payments by telephone or online and taking advantage of the fact that borrowers cannot "select their mortgage loan servicers." (Compl. ¶ 97.)

As said above, Johnson plausibly has pleaded that the pay-to-pay fees are unlawful under the UDCPA. Those allegations are sufficient to state a claim under the UTPA. ORS § 646.607(6) (providing that an unlawful collection practice under ORS § 646.639 is an unlawful trade practice under the UTPA); *see also Gordon v. Rosenblum*, 276 Or. App. 797, 814 n.10 (2016) (stating that the UTPA has incorporated the UDCPA), *aff'd*, 361 Or. 352 (2017).

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

**CONCLUSION**

For the above reasons, SPS's Motion for Judgment on the Pleadings (ECF 28) should be DENIED.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 14 days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within 14 days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: November 17, 2025.

JEFF ARMISTEAD
United States Magistrate Judge